AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| Diquis MANLY | ) | |
| J-Shun HARRIS II | ) | |
| | ) | |
| | ) | |
| | ) | |

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _December 21, 2022_ in the county of _Webb_ in the _Southern_ District of _Texas_ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 8 U.S.C. §1324(a)(1) | Knowing and in reckless disregard of the fact that a certain alien had come to, entered, and remained in the United States in violation of law, did transport and move, attempt to transport and move, and conspire to transport and move such alien within the United States, by means of transportation and otherwise, in furtherance of such violation of law. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

/S/ Norma Martinez

_Complainant's signature_

Submitted by reliable electronic
means per Fed.R.Crim.P. 4.1, Norma Martinez
sworn to and signature attested
telephonically on December 23, 2022,
at Laredo, Texas.

Christopher dos Santos
United States Magistrate Judge

dge

**ATTACHMENT A**

I am a Special Agent of the United States Homeland Security Investigations (HSI), and have knowledge of the following facts:

1.     On December 21, 2022, a Border Patrol Agent (BPA) was working his assigned duties at the Cotulla Border Patrol Checkpoint near the 29-mile marker of Interstate Highway-35 (IH-35) north of Laredo, Texas. At approximately 6:33pm, a black dully pickup hauling a gooseneck trailer with two vans on it was referred to the secondary area because of a canine alert. A BPA stated that the pickup had fled the checkpoint, at which time, a BPA activated his emergency lights and siren in the attempt to catch up the pickup truck. A BPA made contact with the truck and initiated a vehicle stop at roughly the 31-mile marker northbound on IH 35.

2.     Once the black dully pickup hauling a gooseneck trailer came to a stop, BPAs handcuffed and secured the driver and codriver respectively. A BPA walked to the trailer and climbed on it noticing the windows on the rear van were foggy. A BPA used his flashlight to see into the rear van and saw people hiding under blankets. The two vans on the trailer were locked; however, the keys to both vans were found inside the black dully pickup truck in a compartment on the dashboard. Using the keys, a BPA was able to open both vans and get the people out of the vans to securely transport them to the Border Patrol Checkpoint.

3.     HSI agents interviewed Diquis MANLY after he voluntarily waived his constitutional rights. MANLY stated that he was from Indiana and had recently attained a job as a hotshot driver. He and his friend J-Shun HARRIS II had made plans to drive down to Laredo, Texas so MANLY could find a "trip". MANLY advised that he and HARRIS II had each rented a vehicle to drive down to Laredo, Texas because they anticipated going across to Nuevo Laredo, Mexico and did not want to take his leased truck and flatbed trailer he normally would use for his hotshot jobs. MANLY stated they did not go to Mexico and decided to wait at a Pilot located on mile marker 13 for a good paying hotshot job. MANLY further stated that by this time they were already driving the leased pickup truck hooked up to the flatbed trailer and had put the two rented vans they drove down in on the flatbed trailer.

4.     According to MANLY, while he and HARRIS II were at the Pilot, they were approached by two unknown male subjects and asked if they wanted to make some extra money. MANLY stated that the one of the male subjects told him they would be paid $3,000 to transport three (3) undocumented noncitizens to San Antonio, Texas. MANLY further stated that he and HARRIS II agreed; however, told the male subject that they did not want to know where the people were being hidden or stashed, at which time MANLY and HARRIS II walked into the convenient store. MANLY claims that as he and HARRIS II walked out of the store, he observed the two male subjects leaving and giving him the thumbs up as if they were ready to go.

5.  MANLY advised agents they continued on their way north on IH-35. As they were approaching the checkpoint, he decided to exit the highway because he noticed the windows of the two vans were fogging up. Once he exited the interstate, he and HARRIS II climbed onto the trailer and opened the doors to the vans, which were on the flatbed trailer, and noticed multiple people on the floorboard of each of the vehicles. MANLY and HARRIS II then continued to the checkpoint and were referred to the secondary area. MANLY stated that he drove through the machine and then continued to drive inadvertently leaving the checkpoint; however, stopped as soon as he realized he was being followed by Border Patrol.

6.  HSI SAs identified and interviewed two (2) material witnesses: Luis Miguel HENRIQUEZ-Velasquez and Vladimir Federico VELASQUEZ-Merino, both citizens of El Salvador respectively and illegally present in the United States. The material witnesses indicated they illegally entered the United States by way of Mexico. Both material witnesses stated arrangements were made with members of a human smuggling organization(s) (HSO) for them to be transported to cities within the interior of the United States. Both material witnesses reported smuggling fees were paid for them to be smuggled into the United States. Both material witnesses stated that on December 21, 2022, they were told to get into one of the vans on the flatbed trailer by Hispanics males; however, they did not see who they were. Shortly after getting into the van they began to move until they were encountered by law enforcement.